UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIE GRAHAM, | : |
| Plaintiff, | : Civ. No. 22-5760 (KM) (ESK) |
| v. | : |
| | : **OPINION** |
| OSCAR AVILES, | : |
| Defendant. | : |

**KEVIN MCNULTY, U.S.D.J.**

Pro se plaintiff Willie Graham, a pretrial detainee at the Hudson County Correctional Facility (the "HCCF"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 stemming from his alleged exposure to the COVID-19 virus at HCCF. In a previous order (DE 2), I granted Graham leave to proceed *in forma pauperis*, and noted that the complaint would be screened in due course pursuant to 28 U.S.C. § 1915A. Having screened the complaint, I now dismiss it without prejudice, for the reasons discussed below.

A.  **Factual Allegations**

The complaint contains the following factual allegations, which, for screening purposes, I accept as true.

Graham has been detained at HCCF for an unspecified amount of time. On August 6, 2022, he became "very ill," apparently from COVID-19, though he does not allege whether he was tested for COVID and, if so, what the results were. DE 1 at 6. After the onset of his symptoms—which he does not describe, apart from loss of appetite—the "medical department" "locked [him] in a cell" for eight days "without any treatment at all." DE 1 at 8. He alleges that unspecified HCCF medical staff members refused to treat him because they were "scared to

come on the housing unit," evidently because they were concerned about being exposed to the COVID virus. *Id.* Graham alleges that he "almost died," and that other inmates contracted COVID-19. *Id.* at 6, 8.

The lone defendant named in Graham's complaint (DE 1) is Oscar Aviles, the acting director of the Hudson County Department of Corrections. Graham alleges that he (Graham) submitted two grievances to Aviles—though he does not state when he sent them, describe their content, or provide copies—and that Aviles "never responded." *Id.* at 5. Aviles allegedly "[knew] about Covid 19 had [spread] all through Hudson," and "refused to stop expose of the deadly virus flowing out through the jail." *Id.* Further, he "never tried to provide any medical treatment" for Graham, and "tried to hide from the problem of a spreaded virus." *Id.* at 6. Graham states that he is seeking "$800,000 because I almost died and my civil rights were violated by the warden, Oscar Aviles." *Id.* at 8.

### B.     Screening Standard

The Prison Litigation Reform Act requires district courts to review complaints in civil actions filed by prisoners. *See* 28 U.S.C. § 1915A(a). District courts must dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege "sufficient

factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted)

### C. Applicable Law

Construing Graham's complaint liberally as I must, he appears to attempt to assert a claim of deliberate indifference to his serious medical needs. His basic claim is that he contracted a serious illness (presumed to be COVID-19), HCCF medical staff did not provide him adequate medical treatment, and that Aviles, as the director of HCCF, should be held liable either because he failed to respond to Aviles's grievances about his medical treatment or because he failed to properly supervise HCCF staff and ensure that proper medical treatment was being provided.

#### 1. Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in

3

>any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

### 2. Deliberate Indifference Claim

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). In the context of a claim alleging a violation of the right to adequate medical care, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A supervisor such as Aviles may not be held vicariously liable for the actions of subordinates. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, a supervisor can be liable if he or she enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of

and acquiesced in his subordinates' violations." A.*M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

### D. Analysis

As an initial matter, it is not clear that Graham has satisfied the first *Estelle* prong, i.e., that he plausibly alleged that he had a "serious" medical need. The Third Circuit has defined a "serious" medical need as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this element, courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

Graham's complaint, as pleaded, does not contain facts establishing the "serious condition" element. That is, Graham does not describe his symptoms or illness at all (apart from loss of appetite and feeling "very ill"),[1] nor does he allege that he tested positive for COVID; that he was "diagnosed by a physician as requiring treatment"; that he had an underlying condition or extreme symptoms such that, if he did have COVID, the need for hospitalization or

---

[1] Graham alleges: "On August 6 of 2022, I became very ill, didn't know how I were feeling so bad, could not eat or drink anything and need medical attention right away. The Covid 19 virus had took me down." DE 1 at 6.

5

other intervention would have been obvious to a layperson; or that the alleged denial of treatment resulted in "a life-long handicap or permanent loss." *Atkinson*, 316 F.3d at 272–73. The most plausible inference to be drawn from his complaint is that he suffered flu-like symptoms beginning in early August and lasting for an unspecified time, and that he had recovered by the time he signed his complaint on September 10 (DE 1 at 9). To be sure, COVID-19 (if Graham in fact contracted COVID-19) may be a serious illness, particularly when coupled with underlying conditions that exacerbate the risk, but temporary symptoms, without more (e.g., an allegation of advanced age, an immunocompromised state, or another underlying health condition putting the detainee at an increased risk of severe illness), are insufficient to establish a "serious" medical need.[2]

But even assuming that Graham's need was "serious," his complaint fails to establish that Aviles—the warden of HCCF—was personally involved in any alleged deliberate indifference. As noted above, Graham names Aviles[3] as a defendant because Aviles, the acting director of HCCF, failed to respond to Graham's grievances complaining about his medical care (or lack thereof). These types of allegations—i.e., a claim that grievances were sent to a warden or other administrator after an alleged denial of care—are generally insufficient to establish supervisory

---

[2] *See, e.g.*, *Est. of Lillis by & through Lillis v. Correct Care Sols., LLC*, No. 16-03038, 2018 WL 1569752, at *7 (D. Colo. Mar. 30, 2018) ("'flu-like symptoms' do not generally rise to the level of severity necessary to constitute a 'serious medical need.'"); *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *4 (N.D. Tex. Jan. 4, 2007) ("flu-like symptoms" did not constitute "serious harm" necessary to establish an Eighth Amendment violation); *Liggins v. Barnett*, No. 4-00-cv-90080, 2001 WL 737551, at *6 (S.D. Iowa May 15, 2001) ("The court has found no case in which a plaintiff suffering from flu-like symptoms . . . has been held to have had a serious medical need."); *Schwartz v. Jones*, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (failure to provide prisoner with aspirin for flu-like symptoms did not give rise to a federal constitutional claim for denial of medical care); *Ware v. Fairman*, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995) (describing flu as "not serious"); *Haberstick v. Nesbitt*, No. 97-6523, at *3, 1998 WL 472447, at *3 (E.D. Pa. Jul. 29, 1998) (flu-like symptoms could not form the basis of a deliberate indifference claim where prisoner presented no evidence that flu was a serious medical need).

[3] The caption lists the defendants as "Oscar Aviles, et al.," and Graham repeats the "et al." later in the complaint (*see* DE 1 at 5), but he does not identify any defendant, even as "John Doe," other than Aviles.

liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the denial of care and either directed or acquiesced in it. *See, e.g.*, *Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (per curiam) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegation they had received grievances; "Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Butler v. Penchishen*, No. 22-CV-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability.").

  Finally, to the extent Graham makes general claims that his constitutional rights were violated merely by having been exposed to the virus, or by an increased risk of exposure to the virus, the allegations are insufficient. Exposure alone does not establish a constitutional violation, *see Hope v. Warden York County Prison*, 972 F.3d 310, 329 (3d Cir. 2020) (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates), and Graham's complaint, as drafted, does not establish that his conditions of confinement amounted to unconstitutional punishment rather than good faith efforts to reduce the spread of COVID. *See*

*id.* at 330 (noting the "challenges inherent in the detention setting"); *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) ("[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.") (citation omitted); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *Youngberg v. Romeo*, 457 U.S. 307, 325 (1982) (under the Due Process Clause, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests").

For these reasons, Graham's claims are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). However, because I cannot state that amendment would be futile, this dismissal is without prejudice to the filing, within 60 days, of a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile).

### D.     Conclusion

For the reasons stated above, Graham's complaint (DE 1) is dismissed without prejudice. Graham may file a proposed amended complaint within 60 days. An appropriate order follows.

Dated: November 14, 2022

/s/ Kevin McNulty
KEVIN MCNULTY
United States District Judge